IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

---

MICHAEL AND LUCILLE SANCHEZ,

        Plaintiffs,

v.                                                                       No. CV 15-00345 WJ/KK

SENTINEL INSURANCE COMPANY, LTD.,
HARTFORD CASUALTY INSURANCE COMPANY,
and JOE MURPHY,

        Defendants.

### MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION TO REMAND
### And
### ORDER REMANDING CASE TO STATE COURT

THIS MATTER comes before the Court upon the Motion to Remand or, in the Alternative, to Defer Its Decision Until Plaintiff Intervernors [*sic*] Have Had an Opportunity to Conduct Discovery, **(Doc. 9)**, filed May 21, 2015, by Plaintiffs Michael and Lucille Sanchez. Having reviewed the parties' briefs and applicable law, the Court finds that Plaintiffs' motion is well taken. Therefore, the motion is **GRANTED**, and this action is **REMANDED** to state court.

#### BACKGROUND

The following well-pleaded facts are accepted as true for present purposes. Plaintiffs' home in Sandia Park, New Mexico, was insured through Defendant Sentinel Insurance Company, Ltd. ("Sentinel"), a wholly owned subsidiary of the Hartford Financial Services Group, named herein as Defendant Hartford Casualty Insurance Company ("Hartford"). Plaintiffs allege that both entities are based in Connecticut. On June 2, 2014, Plaintiffs' home

suffered covered water damage that resulted in accidental water damage and mold damage throughout the house. During the course of repairs, additional covered water damage was discovered in October 2014, December 2014, and January 2015. Nonetheless, Sentinel and Hartford failed to make timely, adequate coverage payments and ceased making payments altogether after early September 2014. Plaintiffs single out Defendant Joe Murphy, an adjuster for Hartford residing in Albuquerque at the time, as integrally involved in the delay and denial of coverage payments.

The record reflects that on February 9, 2015, Plaintiff's' counsel responded to earlier communications sent by Hartford's representative. In the February 9 letter, Plaintiffs' counsel set forth his client's position as to Hartford's liability and promised to file suit within twelve days if Hartford did not pay on Plaintiffs' claims. *See* **(Doc. 9 Ex. 1)**, Letter.

Defendants state, and Plaintiffs do not dispute, that Murphy applied for a position with Hartford in Indiana "in late February 2015." *See* **(Doc. 10)**, Response, at 5. On February 27, 2015, Hartford offered him this position, which he accepted "promptly." *See id.*

Murphy moved to Demotte, Indiana, on March 27, 2015. Two weeks before he did so, Plaintiffs filed the complaint in this action in state court, bringing claims of breach of contract, unfair insurance practices, and unfair trade practices. *See* **(Doc. 1 Ex. D)**, Complaint. Murphy accepted service in Indiana. *See* **(Doc. 1 Ex. A)**, Affidavit of Joe Murphy; **(Doc. 9 Ex. 3)**, Acceptance of Service.

On April 24, 2015—the same day that Murphy filed his acceptance of service—Defendants removed the case to this Court, asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332. Although Defendants acknowledge that Murphy lived in New Mexico at the time that the

complaint was filed, they assert that he never established domicile in this state and had actually maintained his Illinois citizenship since leaving that state.

## LEGAL STANDARD

Removal is proper where there is complete diversity of citizenship between the parties and the amount in controversy exceeds the jurisdictional amount of $75,000, exclusive of interest and costs. 28 U.S.C. §§ 1332(a), 1446(c). In seeking removal, the removing party has the burden of proving both of these elements. *Huffman v. Saul Holdings Ltd. P'ship*, 194 F.3d 1072, 1079 (10th Cir. 1999) (citation omitted). Here, no party disputes that the amount in controversy exceeds $75,000.

"Complete diversity" exists where no plaintiff and no defendant are citizens of the same state. *E.g.*, *Middleton v. Stephenson*, 749 F.3d 1197, 1200 (10th Cir. 2014) (citing *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005)). "For purposes of diversity jurisdiction, a person is a citizen of a state if the person is domiciled in that state. And a person acquires domicile in a state when the person resides there and intends to remain there indefinitely." *Id.* (internal citations omitted). "[D]iversity of citizenship is assessed at the time the action is filed." *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991) (per curiam) (citations omitted).

## DISCUSSION

Defendants did not allege that Murphy was a fraudulently joined party in their Notice of Removal, and they do not claim as much in response to Plaintiffs' motion. Further, no one disputes that diversity of citizenship exists between Plaintiffs and the two insurance company Defendants. Accordingly, the Court limits its analysis to the issue addressed by the parties— whether Plaintiffs and Murphy were diverse parties. As the removing parties, Defendants bear the burden of establishing that Murphy was not a citizen of New Mexico—which is to say, that

he was not domiciled in the state—as of March 10, 2015, the date that the complaint in this action was filed.

It is undisputed that Murphy was residing in New Mexico on March 10, 2015. As such, the only question remaining before the Court is whether Murphy had established residence in New Mexico with the intention to remain here indefinitely. *See Middleton*, 749 F.3d at 1200. And the evidence that Murphy did so is strong. To begin with, Murphy's residence in New Mexico creates a rebuttable presumption that he was domiciled in this state, requiring Defendants to come forward with contrary evidence. *See State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 519 (10th Cir. 1994) (noting that a party's residence in Wyoming "created a presumption of continuing residence" there). In two affidavits,[1] Murphy acknowledges that when he moved to New Mexico in November 2013, his fiancée moved with him, and the two entered into a year-long housing lease. When that lease expired, the couple entered into a second year-long lease. Murphy eventually obtained a New Mexico driver's license after nine months of residence in the state. He was employed in New Mexico by Hartford beginning in November 2013, and he acknowledges that he paid at least a portion of his tax obligations to the State of New Mexico for the calendar year 2013; since Murphy's employment with Hartford in New Mexico continued through 2014, the Court presumes he also paid New Mexico taxes for that year. After arriving, Murphy used a cellular telephone with a New Mexico area code. While in New Mexico, Murphy began a family—his fiancée became pregnant no later than January 2014, and that month he entered into a domestic partnership with her.

---

[1] The first affidavit, dated April 23, 2015, was filed with Defendants' Notice of Removal. *See* **(Doc. 1 Ex. A)**, Declaration. The second, dated June 5, 2015, was attached to Defendants' response to the instant motion and largely expands on the content in the original affidavit. *See* **(Doc. 10 Ex. A)**, Declaration. The Court draws from both affidavits to inform its ruling.

Defendants expend significant effort encouraging the Court not to read too much into these ties to New Mexico. For example, Murphy states that he only entered into annual leases because month-to-month leases were cost-prohibitive, but he does not address the likelihood of incurring additional costs associated with breaking an annual lease if he were suddenly to return to Illinois. Murphy excuses his acquisition of a New Mexico driver's license by saying that he lost his wallet, in which he carried his Illinois license. However, Illinois provides a straightforward process for replacing lost driver's licenses, even for out-of-state Illinois drivers, *see* 625 ILL. COMP. STAT. 5/6-114 (2005),[2] and Murphy does not explain why he could not pursue this process to replace his lost license if he intended to maintain his Illinois domicile. He excuses his payment of New Mexico taxes in 2013 by pointing out that he also paid Illinois taxes that year, an unremarkable fact considering that Murphy was legally obligated to pay taxes on his Illinois income. *See* ILL. ADMIN. CODE tit. 86, § 100.3020(g)(4) (2013). He does not assert that he has paid taxes in Illinois since that time.

Murphy also claims that he received his New Mexico phone number under a cell phone plan paid for by Hartford, but he does not explain how this should diminish this connection to the state. Indeed, it is likely that Hartford helped him acquire this number precisely so Murphy's clients would perceive him to be an insurance adjuster with ties to New Mexico. Finally, Murphy suggests that he only "entered into a New Mexico domestic partnership for the purpose of adding [his fiancée] to [his] health insurance so she could receive health insurance coverage while she was pregnant." Although the Court wonders how Murphy's spouse, the mother of his child, would react to this unsentimental description of their union, the Court does not see this statement as diminishing their marriage's legal significance for purposes of determining domicile.

---

[2] *See also Driver's License/State ID Card: Lost/Found/Stolen Driver's License/State ID Card*, CYBERDRIVEILLINOIS.COM, https://www.cyberdriveillinois.com/departments/drivers/drivers_license/drlicid.html#loststolen (last visited June 26, 2015) (Illinois Secretary of State's Office website).

Murphy, who was 23 years old when he arrived in New Mexico, more affirmatively states that he left some property at his parents' home in Illinois at that time, including his "bed, some clothing, tools and other personal property." However, he also notes that all of this property "remains in Illinois at [his] parents' home," even several months after he and his spouse moved from New Mexico to Indiana, and he does not describe any efforts to acquire this property from his neighboring state. Murphy also says left a car in Illinois, but he notes that he did so because Hartford provided him with a company car in New Mexico, and at any rate his then-fiancée also brought her own vehicle to this state. He does not indicate that he has made any effort to retrieve his car now that he resides in a state neighboring Illinois. Murphy has managed, and continues to manage, without these objects for the better part of two years, leading the Court to presume from context that this property is not of great significance to him.[3] Although Murphy also says he "maintained [his] banking records in Illinois," this fact holds little significance in our globalized age, where individuals can easily hold accounts with banks that are physically based in other states or that maintain no physical locations at all.

Defendants more broadly insist that Murphy retained Illinois domicile because he "never intended to stay in New Mexico indefinitely" and hoped to stay in New Mexico "for no more than two years." In fact, the only reason Murphy took this position, he suggests, is because he received a promotion that "involved a transfer to New Mexico." However, Murphy does not specifically say in his affidavits that he ever intended to return to Illinois, and his subsequent move to Indiana casts such a motive into doubt. He certainly gives no indication that he had any

---

[3] Although Murphy's move to Indiana in April 2015 informs the Court's interpretation of certain declarations that he has made regarding domicile in Illinois, the move itself is of no direct relevance to whether diversity jurisdiction existed at the time this action was commenced. *See Freeport-McMoran*, 498 U.S. at 428.

objective reason to believe that his stay in New Mexico would last for no more than two years and would end with a return to Illinois.[4]

Even interpreting Murphy's statements as expressing, at best, a "floating intention" to return to Illinois—that is, one that is "indefinite as to the time of his return," *see Jones v. Kyle*, 190 F.2d 353, 355 (10th Cir. 1951)—such an intention "does not prevent the acquisition of a new domicile," *see Crowley v. Glaze*, 710 F.2d 676, 678 (10th Cir. 1983). "A district court may, but is not required to, give credence to statements by a party about his intentions to remain in one state as opposed to another." *Chaara v. Intel Corp.*, 410 F. Supp. 2d 1080, 1092 (D.N.M. 2005) (citing *Crowley*, 710 F.2d at 678), *aff'd*, 245 F. App'x 784 (10th Cir. 2007) (unpublished). For that matter, Murphy's "[m]ere mental fixing of citizenship [in Illinois] is not sufficient. What is in another man's mind must be determined by what he does as well as by what he says." *Walden v. Broce Constr. Co.*, 357 F.2d 242, 245 (10th Cir. 1966) (quotation omitted). Here, Murphy took numerous steps that demonstrate that he had abandoned his domicile in Illinois and established new domicile in New Mexico. Defendants' attempts to explain away these steps do not defeat the rebuttable presumption of New Mexico citizenship created by his residence in this state. *Cf. State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d at 519.

Defendants attempt to analogize Murphy's situation to that in *Gates v. Commissioner of Internal Revenue*, 199 F.2d 291 (10th Cir. 1952), a tax case discussing domicile. That action involved a taxpayer who grew up in Colorado, the son of a man who was the president and principal owner of a Denver-based rubber company. *Id.* at 292. The taxpayer graduated from high school in Hawaii and attended college in Massachusetts and California, then worked for three years at a synthetic rubber plant in Louisiana, all with the express purpose of acquiring

---

[4] In Murphy's original affidavit, he characterizes his transfer as "temporary." This adjective is curiously absent from the same line in his more recent affidavit. In either case, Murphy points to no other support for this characterization of his transfer.

7

experience in the rubber industry so that he could eventually join the management team at his father's rubber company. *Id.* at 292-93. While in Louisiana, and before ultimately returning to Colorado to join his father's company, the taxpayer maintained country club membership in Denver, and he filed federal tax returns that alternatingly listed home addresses in Colorado and Louisiana. *Id.* The taxpayer later testified that he always considered Colorado to be his permanent home and that he always intended to return to Denver after gathering sufficient business experience to work at his father's company. *Id.* at 293. The Tenth Circuit, reviewing a Tax Court decision, agreed that the taxpayer's intention to return was based on events that he "reasonably anticipated would occur and was not an indeterminate or floating intention." *Id.* at 294. In light of the taxpayer's testimony and the court's findings, the Tenth Circuit concluded that the taxpayer had maintained his domicile in Colorado, even during his three years of work in Louisiana. *Id.* at 294-95.

By contrast, Defendants provide no evidence of Murphy's continuing connections to Illinois analogous to the *Gates* taxpayer's professional and social connections. Murphy does not attest that he always intended to return to Illinois; he does not state that he considers Illinois his permanent home; and indeed, he did not return to Illinois after ending his employment in New Mexico. Moreover, Defendants points to no circumstances under which Murphy, like the *Gates* taxpayer, could "reasonably anticipate[]" he would return to Illinois. Instead, the evidence shows that Murphy lived in New Mexico on the date of his complaint and that he developed ties to the state indicating an intention to remain here indefinitely. Such is all that is required to establish that Murphy has abandoned domicile in Illinois and established it in New Mexico. *See Middleton*, 749 F.3d at 1200; *see also Walden*, 357 F.2d at 245.

8

Because Murphy was domiciled in New Mexico when the complaint in this action was filed, he is to be regarded as a citizen of New Mexico for purposes of determining diversity. *See Middleton*, 749 F.3d at 1200. Since Plaintiffs are also New Mexico citizens, complete diversity is lacking, and the Court therefore lacks subject-matter jurisdiction over this action. *Cf.* 28 U.S.C. 1332(a). Accordingly, this action must be remanded to state court. *See* 28 U.S.C. § 1447(c).[5]

## CONCLUSION

For the foregoing reasons,

IT IS THEREFORE ORDERED that Plaintiffs' Motion to Remand, **(Doc. 9)**, is **GRANTED**.

IT IS FURTHER ORDERED that this action is **REMANDED** to the Second Judicial District Court, County of Bernalillo, State of New Mexico. The Clerk of Court is directed to take the necessary actions to effectuate this remand.

**SO ORDERED**

_____
UNITED STATES DISTRICT JUDGE

---

[5] The Court therefore does not consider Plaintiffs' request to conduct discovery on the question of Murphy's citizenship. As Defendants have failed to meet their burden to establish jurisdiction, such discovery is unnecessary.